IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD R. ROMIG, JR. | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | |
| v. | : | 22-cv-02898-RAL |
| | : | |
| COUNTY OF LEHIGH, et al | : | |
| Defendants. | : | |

<u>MEMORANDUM OPINION</u>

**RICHARD A. LLORET**  December 4, 2023
**U.S. MAGISTRATE JUDGE**

Plaintiff Richard Romig ("Mr. Romig" or "Plaintiff") has sued his employer, Lehigh County, and a number of executives within the Lehigh County Office of Aging and Adult Services, and the Lehigh County Department of Human Resources. He raises claims pursuant to the Americans with Disabilities Act of 1990 (ADA); 42 U.S.C. § 1983; the First Amendment (alleging a violation of freedom of speech/petitioning for redress of grievances) and § 1983 (retaliation); 42 U.S.C. §§ 1983, 1985 (conspiracy); intentional infliction of emotional distress; and unspecified violations of the Pennsylvania Constitution. Plaintiff alleges that Lehigh County Office of Aging and Adult Services and the Human Resources Department violated his rights when he attempted to obtain a Reasonable Accommodation Request (RAR) in January 2021. An identical request was granted in January 2020 for a one-year period, allowing Mr. Romig to not be placed "on call" after hours, and not to receive referrals that included hospice patients and individuals afflicted with cancer. *See* ¶¶ 23-24.

All defendants have moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(1) and (b)(6). Doc. No. 6. Defendants argue the complaint fails to aver sufficient facts to state any viable claims for relief under federal or state law. They further allege

1

the defendants are entitled to qualified immunity from the alleged federal claims, and the state law claims are barred by the Pennsylvania Political Subdivision Tort Claims Act. Doc. No. 6 ("Motion").

"[W]hen presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' *Id*. at 679." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009).

Using this standard, the defendants allege the Plaintiff fails to state a claim for which relief may be granted in any of the counts of the indictment. Applying the first prong of *Iqbal*, I have examined the Complaint to determine the factual and legal claims set forth. In paragraphs 10 through 84 of the Complaint, Plaintiff sets forth a chronology of the facts from his hiring in May 2001 through June 2022. The Defendant has accepted all of the allegations in those paragraphs as true for purposes of their motion to dismiss. Defendant contends that paragraphs 85-116 "are more aptly characterized as conclusions of law [] which need not be accepted as true for purposes of" the motion to dismiss. I agree. I address each claim in turn.

1. Count One – the ADA.

Plaintiff alleges he was discriminated against by all defendants pursuant to the ADA, Title II, Part 35, nondiscrimination on the basis of disability in state and local government services. The defendant alleges that in order to state a claim for discrimination under the ADA, a plaintiff must allege: 1) he is disabled within the

meaning of the ADA; 2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and 3) he has suffered an otherwise adverse employment decision as a result of the discrimination. *Gaul v. Lucent Tech.*, 134 F.3d 576, 580 (3d Cir. 1998). Judge Roth stated it this way in *Ostrowski v. Con-Way Freight, Inc.*, 543 Fed. App'x. 128, 130 (3d Cir. 2013):

> We analyze ADA and PHRA disability claims under the burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *Shaner v. Synthes,* 204 F.3d 494, 500 (3d Cir. 2000). This framework requires that a plaintiff first establish a prima facie case of disability discrimination. *See Shaner,* 204 F.3d at 500. To do so, the plaintiff must demonstrate that he has a "disability" within the meaning of the ADA, that he is a "qualified individual," and that he "has suffered an adverse employment action because of that disability." *Turner v. Hershey Chocolate U.S.,* 440 F.3d 604, 611 (3d Cir. 2006). If the plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *Shaner,* 204 F.3d at 500.

*Id*. Defendants contend that the Plaintiff has failed to meet the first and third prongs: that he is actually disabled within the meaning of the ADA, and that he has suffered an otherwise adverse employment decision as a result of the discrimination.

"A person qualifies as 'disabled' under the ADA if he: (1) has a physical or mental impairment that substantially limits one or more of his major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment." *Keyes v. Catholic Charities of the Archdiocese of Phila.,* 415 Fed. Appx. 405, 409 (3d Cir.2011) (citing 42 U.S.C. § 12102(2)). "To be substantially limited in a major life activity, the plaintiff must be (i) unable to perform a major life activity that the average person in the general population can perform; or (ii) significantly restricted as to the condition, manner or duration under which he or she can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the

general population can perform that same major life activity. 29 C.F.R. § 1630.2(j) (1); *Emory v. AstraZeneca Pharm., LP,* 401 F.3d 174, 180 (3d Cir.2005)." *Seibert v. Lutron Elecs.*, No. CIV.A. 08-5139, 2009 WL 4281474, at *5 (E.D. Pa. Nov. 30, 2009), *aff'd.* 408 Fed. App'x. 605 (3d Cir. 2010).

The defendants argue that Mr. Romig has alleged that he suffers from certain diagnosed conditions (PTSD, Prolonged Grief Disorder, Depression, Anxiety, and Insomnia) as a result of his wife's death from cancer in August 2017, resulting in a litany of emotional and mental disorders/disabilities, listed at paragraph 21 of the Complaint. Doc. No. 1, pp. 6-9. The extensive list can be condensed as describing depression, anxiety, insomnia, uncontrollable anger, and memory problems. Defendants argue that, while describing his condition, Plaintiff fails to adequately and specifically aver how these alleged emotional/mental impairments substantially limit one or more major life activities. They argue that he fails to allege how he is unable to perform a "major life activity" that an average person in the general population can perform, or any significant restriction as to the condition, manner, or duration under which he can perform a specific major life activity—as compared to the condition, manner, or duration under which an "average" person in the general population could perform the same major life activity. Motion at 20.[1]

Plaintiff responds that he has documented his diagnoses of mental disorders classified in the DSM-V as "disabilities" within the meaning of the ADA, and that the county acknowledged his disabilities were not "transitory" or "minor" when they granted a reasonable accommodation request (RAR) for a period of 12 months, removing him

---

[1] Page numbers are those inserted at the top by the Clerk of Court.

from the Agency on Aging "On-Call" list and agreeing not to assign him "older adult hospice/cancer referrals." Doc. No. 10-1 ("Resp.") at 9. Plaintiff argues that because the county failed to renew the RAR in January 2021, or on several occasions thereafter, and he has alleged these denials in the complaint, that he meets the requirements of a claim pursuant to the ADA.

In order to affect a "major life activity" pursuant to the ADA, an impairment must "substantially limit" the individual in performing the activity. The list of representative major life activities includes caring for oneself, performing manual tasks, concentrating, thinking, writing, communicating, interacting with others, and working. 28 C.F.R. § 35.108(c)(1)(i). Plaintiff contends that his impairments substantially limit his ability to work. The complaint alleges, however, only that he has a problem performing two tasks—being "on call" and taking referrals from adult hospice patients with cancer.

Section 35.108 states that "the threshold issue of whether an impairment substantially limits a major life activity should not demand extensive analysis." § 35.108(d)(1)(ii). Significant to this case, it also states that "not every impairment will constitute a disability within the meaning of this section." 35.108(d)(1)(v). The appropriate question is whether the complaint adequately pleads that Plaintiff's ability to perform the major life activity of "working" is "substantially limited" by his impairments. I find it has not done so.

> For an impairment to substantially limit the major life activity of working, such that it qualifies as a disability under the ADA, it must render the individual "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." *O'Connor v. Huntington U.F.S.D.*, No. 11–CV–1275 (JFB)(ARL), 2014 WL 1233038, at *11 (E.D.N.Y. Mar. 25, 2014) (internal citations and quotation marks omitted); *see, e.g., Petrone v. Hampton Bays Union Free Sch. Dist.*, No. 03–CV–4359, 2013 WL 3491057, at *21

(E.D.N.Y. July 10, 2013), *aff'd,* 568 Fed. App'x. 5 (2d Cir. 2014). "A class of jobs encompasses a breadth of positions related to the one a plaintiff cannot perform, not simply analogous positions with slight variations." *Wegner,* 560 Fed. App'x. at 24 (citing *Muller v. Costello,* 187 F.3d 298, 313 (2d Cir.1999)). "The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *Cameron v. Community Aid for Retarded Children, Inc.,* 335 F.3d 60, 65 (2d Cir.2003) (internal citations and quotation marks omitted).

*Anderson v. Nat'l Grid, PLC*, 93 F. Supp. 3d 120, 137–38 (E.D.N.Y. 2015).

Plaintiff has not adequately pled that he is incapable of "perform[ing] either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." *Id*. He contends only that two discrete assignments, being "on-call" and handling hospice patients with cancer, cause issues of such magnitude that he is incapable of performing them. This is not enough to maintain a claim pursuant to the ADA. *See, Williams v. Philadelphia Hous. Auth. Police Dep't*, 380 F.3d 751, 763 (3d Cir. 2004) (inability to carry a firearm due to depression did not preclude plaintiff from performing a broad range of jobs, and therefore plaintiff was not disabled within the meaning of the ADA).

I also find that Plaintiff failed to meet the third prong necessary to make out a claim for discrimination under the ADA because he has not sufficiently pled that he suffered an adverse employment decision as a result of discrimination. Taking all facts pled as true, the most Plaintiff has shown is that his employer chose not to renew the RAR, but he has not pled any actual harm that has occurred because of that denial. Indeed, the exhibits to the Complaint (Docs. 1-4 through 1-23) establish only that his employer has advised Plaintiff that, although his RAR was not going to be renewed, he would not be assigned cancer patients in hospice care, and he is free to work with his co-

6

workers to have his on-call shifts covered by other employees. Plaintiff has not pled an adverse employment action.

Even if Plaintiff had adequately pled a claim under the ADA, punitive damages are not awarded in private suits filed under the ADA. *Barnes v. Gorman*, 536 U.S. 181, 189 (2002) ("Because punitive damages may not be awarded in private suits brought under Title VI of the 1964 Civil Rights Act, it follows that they may not be awarded in suits brought under § 202 of the ADA and § 504 of the Rehabilitation Act."). Therefore, Plaintiff's claim for punitive damages also fails.

Finally, with respect to Count One, Plaintiff fails to state a viable claim against the Defendants for retaliation under the ADA. A *prima facie* retaliation case under the ADA requires that a plaintiff allege 1) protected employee activity; 2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and 3) a causal connection between the protected activity and the employer's adverse action. *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997). Plaintiff argues that a change in employment status, responsibilities, or duties that do not result in a reduction in pay or benefits may still qualify as an adverse employment action. *Jackomas v. City of Pittsburgh*, 342 F. Supp. 3d 632, 643 (W.D. Pa. 2018). That case states,

> a change in employment status, responsibilities, or duties that does not result in a reduction of pay and/or benefits may nonetheless qualify as an adverse employment action. *Dilenno v. Goodwill Indus., of Mid-Eastern Pa.*, 162 F.3d 235, 236 (3d Cir. 1998). The core inquiry is whether a reasonable jury could determine that the employee's employment was substantially worsened. *Id.* at 236; *see also Bearley v. Friendly Ice Cream Corp.*, 322 F.Supp.2d 563, 577 (M.D. Pa. 2004) (concluding that a reasonable jury could find that a transfer from a bookkeeping position to a food preparation position was an adverse employment action because it would "likely involve different working conditions, status, skill, and authority").

*Id*. Plaintiff reasons that a jury could determine that his employment was substantially worsened by being assigned cancer/hospice cases, triggering his PTSD. The problem with this argument is that the complaint itself states that the County in fact agreed to take back any such cases assigned to him. Thus, we are left with the same problem noted above—the only adverse action Plaintiff has pled is the County's decision not to grant the RAR for a second full year. That does not suffice.

Plaintiff has failed to plead an appropriate claim pursuant to the ADA and Count I of the complaint will be dismissed.

    2.   Count Two – § 1983.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). To establish liability against a municipal actor (referred to as *Monell* liability), a plaintiff must show a constitutional violation by a municipal actor that was caused by a municipal policy or custom. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690–91 (1978). The policy is established when the municipal decisionmaker who holds the final authority "issues an official proclamation, policy, or edict." *Boyle v. City of Philadelphia*, 476 F. Supp. 3d 101, 114 (E.D. Pa. 2020) (citation omitted). "In contrast, a custom can be established by showing that 'a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.' *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990). Critically, 'a municipality cannot be found liable on a *Monell* claim where there has been no underlying violation of rights.' *Johnson v. City of Phila.*, 105 F.Supp.3d 474, 482 (E.D. Pa. April 30, 2015)." *Boyle* at 114.

Defendants argue that the Complaint fails to plead an underlying violation of rights by the municipality. Motion at 23-24. "[A] plaintiff advancing a municipal liability claim must establish (a) 'a violation of a federal right'—which may not necessarily arise from the liability of an individual employee—and (b) a municipal policy or custom that caused the violation." *Butler v. Lamont*, 672 Fed. App'x 139, 142 (3d Cir. 2016) (citation omitted). Defendants contend that, once the legal conclusions in the Complaint are set aside, because they need not be accepted as true, the Complaint "does not allege sufficient facts to make out a plausible violation of any constitutional or statutory right." Motion at 24.

Plaintiff responds by again relying on his assertion that, once he established his disability, that the municipality subjected him to "prohibited acts" within the meaning of the ADA Title II regulations. Resp. at 11. The "prohibited acts," however, are delineated as "a prohibition against placement on the Lehigh County Office of Aging and Adult Services/Area Agency on Aging "On-Call" list and receiving older adult hospice/cancer referrals." *Id*. Plaintiff states that his

> Complaint pleads that Defendant County, by and through the above-captioned Defendants, had a policy that all personnel working in the Office of Aging and Adult Services/Area Agency on Aging, as a condition precedent to being hired by and continued employment with Defendant County, are required to work "On-Call" duty and receive older adult hospice/cancer referrals. (¶¶ 136, 138(b)). Defendants utilized said policy as a justification for discriminating against Romig by denying his request for a Reasonable Accommodation Request (RAR), assigning to him older adult hospice/cancer referrals, and unlawfully threatening him with demotion and/or termination.

Resp. at 13. This is a fairly accurate summary of the allegations in the Complaint. Missing from the response to Defendants' motion to dismiss (and indeed, from the Plaintiff's theory of the case), is how the County violates the Constitution by setting

forth a reasonable set of requirements for a particular job, and then requiring those hired for that job to perform those requirements.

There is no Constitutional right to be paid for a particular position that requires certain job functions that a person is not qualified, willing, or able, to perform. According to the exhibits to the Complaint, which I may consider when deciding a Rule 12(b)(6) motion, *see Mayer v. Belichick*, 605 F.3d 223, 230 (2010), Plaintiff was made aware that the agency could not approve his request to be completely removed from on-call assignments for another year because of its adverse impact on the remaining staff, which appears to be small, and only the Protective Services staff have the required training and job classification to perform the on-call duties. Doc. No 1-18, p. 12. The same document also states that Plaintiff was advised at the time he applied for the position he now holds, that on-call assignments were a requirement of the job. *Id*. While this document is an email written by one of the named Defendants and not an official manual or publication of the agency, Plaintiff has not pled any facts that would counter the truth of these statements.

Plaintiff has failed to allege an "official proclamation, policy, or edict" was implemented by the municipality that violated a constitutional or statutory right of the Plaintiff. *Boyle* at 114. At best, he alleges that the municipality failed to grant a request for accommodation allowing him to avoid certain required job functions, namely taking on-call shifts and accepting into his case load individuals in hospice suffering from cancer. The facts pled and the exhibits to the Complaint show the employer offered Plaintiff a way to continue to skip on-call shifts, and show that the municipality agreed not to assign cancer patients in hospice to Plaintiff for another year. Doc. No. 1-18, p. 12.

Plaintiff has failed to plead sufficient facts establishing *Monell* liability because there is no underlying violation of rights pled in the complaint. Count II will be dismissed.

3. Count Three – § 1983, Retaliation.

In Count III, the Plaintiff sues not just the county, but all Defendants, under § 1983 for retaliation.

> A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior. Parratt v. Taylor,* 451 U.S. 527, 537 n. 3 (1981); *Hampton v. Holmesburg Prison Officials,* 546 F.2d 1077, 1082 (3d Cir.1976). Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. *Compare Boykins v. Ambridge Area School District,* 621 F.2d 75, 80 (3d Cir. 1980) (civil rights complaint adequate where it states time, place, persons responsible); *Hall v. Pennsylvania State Police,* 570 F.2d 86, 89 (3d Cir. 1978) (same).

*Rode v. Dellarciprete*, 845 F.2d 1195, 1207–08 (3d Cir. 1988). Plaintiff's only attempt at pleading retaliation with any specificity occurs in ¶ 137, where Plaintiff states that emails between one or more Defendants and himself on a series of dates beginning on March 2, 2021 and ending with April 20, 2022 constitute "overt actions by the above-captioned Defendants in furtherance of the aforesaid on-going civil conspiracy. . . ." The exhibits to the Complaint, however, make no such showing. None sets forth any statement or action which would constitute a violation of a Constitutional right of Plaintiff. Presumably, Plaintiff believes his First Amendment right to freedom of speech has been violated (*see* heading of Count III, "First Amendment – Freedom of Speech/Petitioning for Redress of Grievances, 42 U.S.C.A. § 1983 – Retaliation).

Although unclear, it would appear that Plaintiff alleges that his freedom of speech was violated when he created a post on social media in which he discussed receiving

11

referrals of older adult(s) "actively dying of Cancer, or in Hospice Care." Doc. No. 1-6, p. 1. No facts are pled, however, that set forth what action was taken by one or more Defendants as a result of the post. Instead, Plaintiff alleges that generally in paragraphs 39-46, and specifically at paragraph 42(d) and (e), Plaintiff sets out the retaliation taken. That "retaliation," however, consists of a May 26, 2021 statement by one of the individual Defendants during a "Zoom conference" that he (Defendant Redding) "was looking for a resolution of this problem, such as a possible transfer of [Plaintiff] to a different position in Aging, but at the same pay grade and without the requirement of On-Call assignments; nonetheless, Redding informed [Plaintiff] that if he continued to submit to Defendant County further Reasonable Accommodation Requests, [Plaintiff] could be involuntarily transferred from his position in Aging as a result of his inability to perform On-Call duties due to his disability, with a reduction in job classification and pay[.]"

      Because Plaintiff has not established that he is disabled pursuant to the ADA, but has alleged only that there are certain tasks within his assigned job that he is unable to do, he does not make out a claim for retaliation. Here, his employers obviously attempted to accommodate him by (1) allowing him to avoid on-call shifts by arranging for coverage; and (2) agreeing not to assign him certain hospice patients with cancer for another year. The Defendant in question, according to the Complaint, stated that the Defendant was attempting to relocate Plaintiff to a job where he could perform all of the job requirements, without a reduction in grade or pay, but also advised that Plaintiff could be reassigned to a lower grade and pay as a solution. This is not retaliation for the exercise of Constitutional rights.

A properly pled claim for retaliation under the First Amendment must allege (1) constitutionally protected conduct; (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) a causal link between the constitutionally protected conduct and the retaliatory action. *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). "Government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." *Allah v. Seiverling,* 229 F.3d 220, 224–25 (3d Cir. 2000) (quoting *Thaddeus–X v. Blatter,* 175 F.3d 378, 386 (6th Cir. 1999) (*en banc*))." *Mitchell* at 530.

Plaintiff has alleged no more than an attempt by his employer to place him in a job which he could do, for appropriate pay. He has alleged no constitutionally protected conduct that is directly linked to any retaliatory action. His retaliation claim fails. Count III will be dismissed.

4.   Count Four – §§ 1983, 1985 - Conspiracy.

In Count Four, Plaintiff accuses all Defendants of conspiracy under 42 U.S.C. § 1985.

> The requirements for establishing a cause of action under 42 U.S.C. § 1985(3) are set forth in a line of Supreme Court cases beginning with the decision in *Griffin v. Breckenridge,* 403 U.S. 88 (1971). There, the Supreme Court clarified that the reach of section 1985(3) is limited to private conspiracies predicated on "racial, or perhaps otherwise class based, invidiously discriminatory animus." *Id.* at 102. The Court strictly construed the requirement of class-based invidious animus in *United Brotherhood of Carpenters and Joiners of America, Local 610 v. Scott,* 463 U.S. 825 (1983), finding that commercial and economic animus could not form the basis for a section 1985(3) claim. Read together, these two cases establish that in order to state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege: (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of

13

the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States. *Id.* at 828–29; *Griffin v. Breckenridge,* 403 U.S. at 102–03. The vitality of this analysis was reaffirmed in *Bray v. Alexandria Women's Health Clinic,* 506 U.S. 263 (1993).

*Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997), *as amended* (May 15, 1997).

Plaintiff's claim is again hampered by his failure to establish that he is disabled pursuant to the ADA, and thus a member of a class of disabled persons entitled to equal protection of the laws.[2] He fails to show discriminatory animus designed to deprive him of such equal protection. Instead, his complaint makes conclusory statements in ¶¶ 153-55, that "two or more of the . . . Defendants, conspired" to deprive him of unexplained equal protection, "as a direct and proximate result of the overt acts of Defendant County," and that they took the "above-described actions" knowingly and intentionally. *Id.* This is insufficient. Plaintiff must define the conspiracy; allege the type of discriminatory animus designed to deprive the Plaintiff, or the class of persons the Plaintiff belongs to, to the equal protection of the laws; set forth one or more overt acts; and allege an injury that occurred as a result. Count IV will be dismissed.

    5.  Count Five – Intentional Infliction of Emotional Distress.

Citing *Papieves v. Kelly*, 263 A.2d 118 (Pa. 1970) and the Restatement (Second) of Torts § 46(1), Plaintiff alleges intentional infliction of emotional distress ("IIED") in Count V. "Extreme and outrageous conduct constitutes behavior 'beyond all possible bounds of decency,' 'atrocious,' and 'utterly intolerable in a civilized community.' *Id.* at

---

[2] The question of what constitutes a "class" of individuals not based upon race remains an open question. "[A] class for purposes of section 1985(3) must be 'something more than a group of individuals who share a desire to engage in conduct that the § 1985(3) defendant disfavors.'" *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 269 (1993). In *Lake v. Arnold*, 112 F.3d 682 (3d Cir. 1997), the Third Circuit found that disabled individuals such as the mentally disabled plaintiff who had been involuntarily sterilized by her parents at age 16, are members of a protected class for purposes of § 1983.

14

151 (citing Restatement (Second) of Torts § 46, cmt. d (1965)))." *Smith v. RB Distribution, Inc.*, 515 F. Supp. 3d 311, 315 (E.D. Pa. 2021). The *Papieves* case involved the vehicular homicide of a couple's 14-year-old son, after which the offending juvenile who hit him took the victim's body and buried it, where it was discovered several months later. Most IIED cases describe similar horrifying circumstances.

Plaintiff here does not meet the "utterly intolerable" threshold. While it is tragic that he suffers from continued mental anguish caused by his wife's early and difficult passing, he does not allege conduct on the part of his employer that crosses the "beyond all possible bounds of decency" line. Indeed, the actions of the employer pled in the Complaint describe an employer taking steps to assist a valued employee during a difficult time. Requiring an employee to eventually return to performing all of the requirements of his job, or move to a different position in which he can comfortably complete all of the job requirements, is not "utterly intolerable" behavior. Furthermore, Plaintiff does not allege a physical injury, harm, or illness related to the distress, a requirement to make out an IIED claim. *Corbett v. Morgenstern,* 934 F. Supp. 680, 684 (E.D. Pa. 1996) ("Stating a claim of IIED also requires an allegation of some sort of physical injury, harm or illness related to the distress.") *See also Robinson v. Fam. Dollar, Inc.*, No. CIV.A. 14-03189, 2015 WL 3400836, at *5 (E.D. Pa. May 27, 2015) (same). Count V will be dismissed.

6. Count Six – "Violation of the Pennsylvania State Constitution – Supplemental State Law Claim."

Plaintiff's final claim alleges that "Defendants' above-described conduct has deprived Plaintiff of his rights pursuant to the Constitution of the Commonwealth of Pennsylvania." That is the entire claim. I agree with Defendants that this fails to state a

claim. *See Balletta v. Spadoni*, 47 A.3d 183, 192-93 (Pa. Cmwlth. 2012) (no direct remedy for money damages under Pennsylvania Constitution for "constitutional defamation"); *Jones v. City of Philadelphia*, 890 A.2d 1188, 1216 (Pa. Cmwlth. 2006) (no direct remedy for money damages under Pennsylvania Constitution Article I, Section 8); *Patton v. SEPTA*, No. 06-707, 2007 WL 219938, at *8 (E.D. Pa. 2007) (Yohn, J.) (Federal District Court is the wrong forum in which to attempt to establish a direct cause of action under the Pennsylvania Constitution, as the issue has not been addressed by the Pennsylvania Supreme Court). Count VI fails to state a claim and will be dismissed.

Based on the above discussion, I will dismiss the Complaint without prejudice because it fails to state a claim pursuant to Rule 12(b)(6). Plaintiff will have 14 days to file an Amended Complaint.

BY THE COURT:


  *s/ Richard A. Lloret*
**RICHARD A. LLORET**
**U.S. Magistrate Judge**